UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MAITE MARTINEZ,

                    Petitioner,

    v.

TODD BLANCHE, et al.,

               Respondents[1].

Case No. C26-0943-SKV

ORDER GRANTING IN PART
PETITION FOR WRIT OF HABEAS
CORPUS

## I.    INTRODUCTION

Petitioner is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1 at 7. Petitioner brings this 28 U.S.C. § 2241 habeas action through counsel, asserting her detention is unlawfully indefinite, violates procedural due process, and violates government regulations. *See generally* Dkt. 1. Petitioner asserts additional claims challenging potential third country removal. *Id.* Petitioner seeks release from detention and injunctive relief related to any future re-detention or third country removal. *Id.* at 4. Government Respondents filed a timely return.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Respondents have substituted Acting United States Attorney General Todd Blanche for Pamela Bondi, and Department of Homeland Security Secretary Markwayne Mullin for Kristi Noem.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 1

Dkt. 5.  Petitioner filed a timely traverse in reply.  Dkt. 8.  This matter is now ripe for review.  Having considered the parties' submissions and the governing law, the Court GRANTS the petition in part and ORDERS that Petitioner be released from detention within twenty-four (24) hours.  Remaining claims and relief are addressed below.

## II.    BACKGROUND

Petitioner is a native and citizen of Cuba who entered the United States as a child on or about August 24, 1980.  Dkt. 6, ¶ 3.

On September 21, 2011, Petitioner was issued a Notice to Appear ("NTA") and placed in removal proceedings in Miami, Florida, having been charged with removability under INA § 237(a)(2)(A)(iii) (aggravated felony conviction) and § 237(a)(2)(B)(i) (controlled substances conviction).  *Id.*, ¶ 5; Dkt. 7, Ex. 2 at 2-4.  Petitioner was released the following day on an Order of Release on Recognizance ("OREC").  Dkt. 6, ¶ 6.

On February 28[2], 2014, Petitioner was ordered removed from the United States to Cuba.  Dkt. 7, Ex. 3.  Petitioner did not appeal the final removal order.  Dkt. 6, ¶ 7.

Petitioner was not removed to Cuba.  *Id.*, ¶ 8.  Instead, on May 14, 2014, Petitioner was released from custody on an Order of Supervision ("OSUP").  *Id*.  Petitioner received another OSUP on May 14, 2015.  *Id.*

On September 17, 2018, Petitioner was served with a Notice of Revocation of Release and a Warrant of Removal/Deportation because ICE determined there was a significant likelihood of removal in the reasonably foreseeable future.  *Id.*, ¶ 9.

---

[2] The Declaration of Adrian Leyba filed in support of Respondents' Return Memorandum asserts that Petitioner was ordered removed to Cuba on February 18, 2014.  *See* Dkt. 6, ¶ 7 (underlining added). The Court assumes this is an administrative typo because February 28 appears on the final removal order (*see* Dkt. 7, Ex. 3) and consistently throughout Respondents' Return Memorandum and pleadings in support.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 2

On January 11, 2019, with ICE having determined her removal to Cuba was *not* likely to occur, Petitioner was released from custody on another OSUP. *Id.*, ¶ 10; Dkt. 7, Ex. 4.

On December 23, 2025, Petitioner was arrested by the Pembroke Pines Police Department in Florida for battery. Dkt. 6, ¶ 11. As of April 3, 2026, Respondents note the battery charge is "still pending." *Id.* A few days later, on December 26, 2025, Petitioner was transferred into federal custody from the Broward County Jail. *Id.*, ¶ 12. ICE revoked Petitioner's January 11, 2019 OSUP, through a Notice of Revocation of Release, on the basis that ICE found "it is appropriate to enforce her February 28, 2014 removal order." *Id.*; Dkt. 7, Ex. 5. The revocation does not allege Petitioner violated any conditions of release or otherwise mention the pending battery charge. Dkt. 7, Ex. 5. Petitioner was served with notice of that revocation the following day while in custody. *Id.* Petitioner has been in federal custody since December 26, 2025 and detained at NWIPC since February 3, 2026. Dkt. 6, ¶ 15.

On January 14, 2026, ICE served Petitioner with a Notice of Removal to Mexico. Dkt. 6, ¶ 14; Dkt. 7, Ex. 6. The Certificate of Service notes Petitioner refused to sign the notice. *Id.* Petitioner was provided another Notice of Removal to Mexico on February 25, 2026. Dkt. 6, ¶ 16; Dkt. 7, Ex. 7. Similarly, the Certificate of Service notes Petitioner refused to sign the notice. *Id.* The record is otherwise limited regarding ICE's decision to pursue Petitioner's removal to Mexico, other than an acknowledgement that "ICE is no longer pursuing removal to Cuba and is instead pursuing third country removal options, such as removal to Mexico…." Dkt. 6, ¶ 13.

On March 19, 2026, Petitioner filed this petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging her detention under the Constitution of the United States, the Immigration and Nationality Act ("INA"), and the Administrative Procedures Act ("APA"). Dkt 1 at 5. Petitioner argues that: (1) her re-detention after being placed on ICE supervision violates

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 3

both procedural due process and federal regulations; (2) her continued detention is presumptively unreasonable under *Zadvydas*[3] and therefore unconstitutional under the Fifth Amendment's Due Process Clause; and (3) removal to Mexico under Petitioner's circumstances would be punitive, contrary to federal statute, and in violation of due process.  *See generally* Dkt. 1 at 9-31.

Petitioner seeks:

(1) release from federal detention (and confirmation of release);

(2) an order preventing re-detention unless the government establishes flight risk or danger based on changed circumstances;

(3) an order preventing the government from re-detaining her without first holding a hearing and the government satisfying its burden of proving changed circumstances since being previously released;

(4) an order preventing the government from re-detaining Petitioner unless the government obtains and provides travel documents to her and her counsel, along with an opportunity to leave within two months;

(5) an order preventing the government from removing (or seeking to remove) Petitioner to a third country without notice and an opportunity to respond in reopened removal proceedings; and

(6) an order preventing the government from removing Petitioner to any third country where she is likely to face imprisonment or other punishment upon arrival.

*Id.* at 32.

### III.    DISCUSSION

Federal courts have authority to grant writs of habeas corpus to individuals detained in "violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); *Yildirim v. Hermosillo*, No. C25-2696-KKE, 2026 WL 111358, at *1 (W.D. Wash. Jan. 15, 2026).  "In habeas cases, federal courts have broad discretion in conditioning a judgment

---

[3] 533 U.S. 678 (2001).

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 4

granting relief," *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013), and may dispose of habeas matters "as law and justice require." *Id.*; 28 U.S.C. § 2243.

**A.      Petitioner's Detention is Presumptively Unreasonable Under *Zadvydas***

The INA expressly permits detention of noncitizens who were admitted to the United States but subsequently ordered removed during immigration proceedings. *See* 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), 1231(a). Section 1231(a) governs the detention and release of noncitizens such as Petitioner who have been ordered removed, and it provides that the Department of Homeland Security (DHS) is required to detain a noncitizen during the 90-day "removal period." 8 U.S.C. § 1231(a)(2). After the "mandatory" 90-day removal period expires, DHS has the discretionary authority to continue to detain certain noncitizens or to release them on supervision. *See* 8 U.S.C. § 1231(a)(6). Although § 1231(a)(6) authorizes ICE to detain noncitizens beyond the initial 90-day window, it cannot do so indefinitely. *See Zadvydas*, 533 U.S. at 682, 697.

In *Zadvydas*, the Supreme Court held that § 1231(a)(6) implicitly limits a noncitizen's detention to a period reasonably necessary to bring about that individual's removal from the United States. *See id.* at 701. The Supreme Court determined that it is "presumptively reasonable" for DHS to detain a noncitizen for six months following entry of a final removal order while it works to remove the individual from the United States. *Id.* "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If the government is unable to meet its burden, then the noncitizen must be released from detention. *See Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018).

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 5

i.    Petitioner's total time detained is presumptively unreasonable.

Petitioner argues that, given her final removal order date of February 28, 2014, "the removal period has long since expired, and detention is no longer required under 8 U.S.C. § 1231." Dkt. 1 at 24. Petitioner further argues that her 117-day detention in 2018, combined with her current re-detention since December 26, 2025, exceeds the presumptively reasonable six-month period articulated in *Zadvydas*. *Id.* Respondents agree that Petitioner is detained under § 1231(a), *see* Dkt. 5 at 1, but disagree that her detention has become presumptively unreasonable under *Zadvydas*. Dkt. 5 at 5. The Court agrees with Petitioner.

The parties agree Petitioner is subject to a final order of removal that was issued on February 28, 2014. Dkt. 1 at 7; Dkt. 5 at 3-4. The record also reflects (although not specifically addressed or argued in either brief) that Petitioner was detained between February 28, 2014 (the date of her final removal order, *see* Dkt. 7, Ex. 3) and May 14, 2014 (the date Petitioner was released on an Order of Supervision, *see* Dkt. 6, ¶ 8), totaling seventy-five (75) days.

Petitioner was also detained in 2018. Petitioner claims she was detained for approximately 117 days in 2018 and received an order of supervision on January 11, 2019. Dkt. 1 at 3. Respondents acknowledge that Petitioner was: served with both a revocation notice and warrant of removal on September 17, 2018 (Dkt. 6, ¶ 9); "taken into federal custody for ICE to effectuate her final order of removal" (Dkt. 5 at 4); and released on supervision on January 11, 2019 (*Id*. ¶10). The actual date on which Petitioner was taken into immigration custody, however, is not entirely clear from the record, but Petitioner's claim that her detention totaled

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 6

approximately 117 days is supportable by Respondents' declarations and attached exhibits.[4] The parties also agree that Petitioner has been in ICE custody since December 26, 2025.

With the record before it, the Court finds that Petitioner spent over two months in custody in 2014, almost four months in custody in 2018, and is approaching four months on her current 2025-2026 detention.

Petitioner asks this Court to aggregate her periods of detention to find the six-month threshold under *Zadvydas* met. *See* Dkt. 1 at 10 (*citing Tang v. Bondi*, No. CV25-1473-RAJ-TLF, 2025 WL 2637750, at *4 (W.D. Wash. Sept. 11, 2025)). Respondents do not meaningfully respond to Petitioner's aggregated-detention theory, expressing only their general disagreement that the six-month presumptively reasonable period has ended. Dkt. 5 at 5. It is, in fact, entirely unclear from Respondents' arguments how they believe the six-month period might properly be calculated in Petitioner's case. *Id*. at 5-6. However, the aggregated-detention theory has been accepted in this district and the Court adopts it here.

The Court finds Petitioner's detention is not presumptively reasonable because her total time spent in detention after entry of her final order of removal exceeds six months. The Court agrees with Petitioner, and the reasoning in *Tang*, that a petitioner's length of confinement need not be consecutive to reach the six-month threshold established in *Zadvydas*. *See also Nguyen v. Scott*, 796 F. Supp. 3d 703, 721-22 (W.D. Wash. 2025) (finding the six-month period does not reset upon each release and collecting some district court cases rejecting arguments to the contrary); *Yuksek v. Bondi*, No. C25-2555-DGE-GJL, 2026 WL 60364, at *2 (W.D. Wash. Jan. 8, 2026) (collecting cases).

---

[4] One hundred and seventeen days before Petitioner was released on her January 11, 2019 OSUP would have put her detention on or around September 16, 2018, one day prior to receiving Notice of Revocation of Release and a Warrant of Removal. *See* Dkt. 6, ¶ 9. Therefore, the Court finds Petitioner was taken into immigration custody on or about September 16, 2018.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 7

The evidence shows, and the parties agree, that Petitioner spent approximately 117 days in custody in 2018 and is approaching four months on her current detention. In addition, as noted above, the record reflects Petitioner was detained immediately after the final February 28, 2014 removal order until May 14, 2014—an additional 75 days. Accordingly, Petitioner's detention, purportedly authorized under § 1231(a), is presumptively unreasonable under *Zadvydas*.

          ii.      <u>Petitioner meets her burden to show it is significantly unlikely she will be removed in the foreseeable future.</u>

Having exceeded the presumptively reasonable threshold, Petitioner also asserts it is significantly unlikely she will be removed in the reasonably foreseeable future. Dkt. 1 at 25. *Zadvydas* "places the burden on the [noncitizen] to show, after a detention period of six months, that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."" *Pelich v. I.N.S.*, 329 F.3d 1057, 1059 (9th Cir. 2003) (quoting *Zadvydas*, 533 U.S. at 701).

At least seven years ago, Respondents determined removal to Cuba was not significantly likely to occur. Dkt. 6, ¶ 10. And despite ICE's December 26, 2025 Notice of Revocation (Dkt. 7, Ex. 5), which purports to find it appropriate to enforce Petitioner's final removal order to *Cuba*, the government has actually abandoned its efforts to remove Petitioner to Cuba. Dkt. 6, ¶ 13 ("ICE is no longer pursuing removal to Cuba and is instead pursuing third country removal options…"). Accordingly, Petitioner's removal to Cuba is not just unlikely, it is improbable.

Turning to Mexico, it is unclear when ICE began considering third country removal options for Petitioner. Petitioner asserts that since her 2025 detention, ICE officers informed her they were attempting to secure her removal to Mexico or Ecuador. Dkt. 1 at 5. As recently as April 2, 2026, Petitioner alleges she had been informed by ICE that they intended to move her

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 8

out of Washington to facilitate removal to Mexico.  Dkt. 10, ¶ 3.  The following day, Petitioner asserts she was informed by ICE that Mexico would not accept her.  *Id.*, ¶ 4.  Petitioner asserts she has no family in Mexico, has never been to Mexico, has not been in contact with any consular officials in Mexico, and has never had any travel documents to Mexico.  Dkt. 1 at 5, 25.

Respondents argue this does not satisfy Petitioner's burden for two reasons.  First, she did not put forward any evidence that Mexico's willingness to accept third-country nationals is limited.  Dkt. 5 at 7-8.  Additionally, Respondents allege "Petitioner has refused to cooperate with the government's efforts to remove her to Mexico."  *Id.* at 8.  As proof of Petitioner's non-cooperation, Respondents point to her refusal to sign the two Notices of Removal to Mexico served during her current detention.  Dkt. 5 at 8; Dkt. 7, Ex. 6 (January 2026 notice); Dkt. 7, Ex. 7 (February 2026 notice).  Respondents argue that 8 U.S.C. § 1231(a)(1)(C), the statute which allows the removal period to be extended for certain obstructionist conduct by the Petitioner, is applicable here and operates to prevent her from showing her removal is significantly unlikely.  Dkt. 5 at 8.  Respondents cite *Lema v. I.N.S.*, 341 F.3d 853, 855 (9th Cir. 2003) for support.  These arguments are not persuasive.

Petitioner certainly meets her burden in demonstrating good reason to believe there is no significant likelihood of removal to *Cuba*, which again, is the country of removal noted in the order Respondents sought to enforce when they revoked her release.  *See* Dkt. 7, Ex. 3 (final Feb. 28, 2014 removal order); Dkt. 7, Ex. 5 (December 26, 2025 revocation order on the basis of enforcing that removal order).  Petitioner's final order of removal to Cuba is now more than twelve years old, Petitioner has been on supervised release multiple times since (*see* Dkt. 6, ¶ 8; ¶ 10), and ICE previously determined in 2019 that removal to Cuba was <u>not</u> significantly likely to occur.  Dkt. 6, ¶ 10; *see also Zadvydas*, 533 U.S. at 699 (concluding that, "once removal is no

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 9

longer reasonably foreseeable, continued detention is no longer authorized by statute."). Nevertheless, Respondents assert Petitioner must also now show removal to Mexico is significantly unlikely to occur in the foreseeable future.  Dkt. 5 at 7.

On these facts, Petitioner, a Cuban national with no apparent ties to Mexico, makes that showing.  ICE made a specific finding in 2019 that removal to Cuba was not significantly likely to occur.  Dkt. 6, ¶ 10.  Presumably, this would have been the point for ICE to start considering other options, such as Mexico.  But there is nothing contained in the record to suggest Mexico was ever considered an option until 2026.  While the Court recognizes it is Petitioner's burden to come forward with evidence to provide good reason to believe there is no significant likelihood of removal, it is also mindful of the practical challenges that burden presents for someone in Petitioner's position.  Requiring a native and citizen of one country to come forward with evidence tending to show they are unlikely to be removed to another country different from that which is noted on their final order of removal, and with which they share no apparent connection (and none offered by Respondents, here), presents a situation not addressed in *Zadvydas*.  That said, there is evidence in the record suggesting Mexico will not take third country noncitizens who refuse to go willingly.  *See* Dkt. 1, Ex. 4 (Supplemental Declaration of Martin Parsons, *Rios v. Noem et al.*, No. 3:25-cv-02866-JES-VET (S.D. Cal. Nov. 5, 2025), ¶ 11.)

Further, Respondents, at most, offer conflicting evidence that Mexico is the decided third country for removal.  *Compare* Dkt. 7, Exs. 6, 7 (January and February 2026 Notices of Removal to Mexico, respectively) *with* Dkt. 6, ¶ 13 (the April 2026 Declaration of Adrian Leyba stating that ICE is pursuing third country removal options, *such as removal to Mexico*) (emphasis added).  To the extent the burden articulated in *Zadvydas* requires Petitioner to show removal to Mexico (rather than Cuba) is unlikely, the Court finds that burden met.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 10

Regarding Petitioner's lack of cooperation, there is an obvious distinction between a noncitizen's refusal to sign a notice of removal and a noncitizen's refusal to secure travel documents or otherwise obstruct efforts to remove. In *Lema,* cited by Respondents in support, the noncitizen was an Ethiopian national who refused to reapply "to Ethiopia for travel documents or furnish[] evidence corroborative of his Ethiopian nationality to Ethiopia despite a request by the INS that he do so." *Lema*, 341 F.3d at 855. The noncooperation in *Lema* is markedly different than that alleged here.

Consequently, Respondents' vague and conclusory assertion that Petitioner's failure to sign notices of removal has prevented ICE from obtaining travel documents is not persuasive. The notices at issue here are simply that—notice of ICE's intent to remove. Any legal or practical significance of Petitioner's refusal to sign is neither intuitive nor self-explanatory. Nor do they contain express language (or any language, for that matter) explaining any consequence for not signing. While there is some information in the record that Mexico refuses to accept those who are unwilling, (*see* Dkt. 1 at 29; Dkt. 1, Ex. 4, ¶ 11) there is no evidence in the record to suggest that: (1) Mexico interpreted Petitioner's unsigned notices as an unwillingness that operates to prevent Mexico's acceptance and that (2) but-for Petitioner's refusals to sign said notices, removal to Mexico is reasonably likely to occur. To the contrary, the evidence in the record is that ICE is pursuing third country removal options, such as Mexico—not that removal is likely to occur but for her lack of cooperation. *See* Dkt. 6, ¶ 13.

Finally, there is at least some evidence that Petitioner is cooperating with ICE to secure travel documents, albeit Cuban travel documents. *See* Dkt. 9, Ex. 2 at 2-3 (correspondence between Petitioner and ICE wherein Petitioner asks what is "need[ed] from [her]" to obtain travel documents).

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 11

Accordingly, the Court does not find that Petitioner's refusal to sign the two notices of removal undermine Petitioner's showing that it is significantly unlikely she will be removed in the reasonably foreseeable future or otherwise justify continued detention under 8 U.S.C. § 1231(a)(1)(C).

> iii.   Respondents do not meet their burden to show a likelihood of removal.

Because Respondents argue Petitioner does not meet her burden, they do not address whether her removal to Mexico actually *is* likely to occur in the reasonably foreseeable future. Dkt. 5 at 8; *see Zadvydas*, 533 U.S. at 701 (requiring the government to respond with evidence to rebut a Petitioner's showing that removal is unlikely). Instead, Respondents provide additional reasons why Petitioner's detention here is not indefinite. Dkt. 5 at 8.

Respondents first assert that the fact that Petitioner does not have a specific date of anticipated removal does not make her detention indefinite. *Id.* (citing *Diouf v. Mukasey*, 542 F. 3d 1222, 1233 (9th Cir. 2008)). Respondents next argue that "[d]etention only becomes indefinite if the country of removal refuses to accept the noncitizen or if removal is legally barred." *Id.* Because Respondents have "no reason to believe that is the situation here," they contend Petitioner's detention is lawful. *Id.*

In *Diouf*, "ICE successfully completed the arrangements for Diouf's removal prior to the originally scheduled removal date of September 4, 2003, and again on May 26, 2005; Diouf was not removed at those times solely because of his own refusal to cooperate." 542 F.3d at 1233. The petitioner in *Diouf did* have specific dates of removal. They just remained unmet because of his refusal to cooperate. *Id.* Here, there is no evidence that the government ever had a date scheduled for removal, or that Petitioner's conduct had any effect on that date. And Petitioner

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 12

does not appear to argue that the lack of a specific date of removal renders her detention unlawful. The Court therefore questions the usefulness of *Diouf*.

To the extent *Diouf* is applicable here, it only serves to remind the Court that the length of a particular detention may not be dispositive on the issue of whether it is presumptively unreasonable if there is evidence the Petitioner's conduct can be attributed to the delay. However, the Court has already found that Petitioner's detention is presumptively unreasonable under *Zadvydas*, notwithstanding Respondents' contention regarding her lack of cooperation. So, at this juncture, it is Respondents' burden to come forward with any evidence that Petitioner's removal to Mexico is significantly likely to occur in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701. The only evidence before the Court is ICE's pursuit of third country removal options, which potentially includes Mexico. Dkt. 6, ¶13. "Courts in this circuit have regularly refused to find Respondents' burden met where Respondents have offered little more than generalizations regarding the likelihood that removal will occur." *Nguyen*, 796 F. Supp. 3d at 725 (citations omitted). Respondents' contention that they have "no reason to believe" Mexico will not accept Petitioner is properly characterized as an insufficient generalization that fails to rebut Petitioner's showing that removal to Mexico is significantly unlikely to occur in the reasonably foreseeable future.

The Court therefore concludes that Petitioner is entitled to release.

**B.    Petitioner's Remaining Claims and Requests for Relief**

The Court, having already found Petitioner is entitled to release under the reasoning of *Zadvydas*, declines to address whether her December 26, 2025 re-detention violates due process or otherwise fails to comply with federal regulations, thereby necessitating release. *See* Dkt. 1 at

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 13

25 (due process claim), 26 (federal regulation claim).  However, the issue of her immediate release is separate from Petitioner's request for injunctive relief, which seeks to:

(1) prohibit the government from re-detaining Petitioner without first holding a hearing before a neutral decisionmaker at which the government bears the burden of establishing flight risk or danger to the community based on changed circumstances since Petitioner was previously released;

(2) prohibit the government from re-detaining Petitioner unless the government obtains and provides valid Cuban travel documents to her and her counsel, and offers an opportunity for her to leave on her own within two months but she does not leave;

(3) prohibit the government from removing Petitioner to a third country without notice and a meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings; and

(4) prohibit Respondents from removing Petitioner to any third country where she is likely to face imprisonment or other punishment upon arrival.

*Id.* at 32.

For the following reasons, the Court GRANTS (1) and (3), but DENIES (2) and (4).

      i.    <u>Respondents must comply with due process and federal regulations when re-detaining noncitizens subject to an OSUP.</u>

Petitioner asserts that due process requires notice and an opportunity to be heard prior to facing re-detention.  Dkt. 1 at 11-15.  Respondents contend that Petitioner was not, and is not, entitled to a pre-detention hearing "in the post-order context."  Dkt. 5 at 9.  Respondents additionally contend the revocation order adequately provided written notice and that detention was lawful because her arrest for battery was a violation of release conditions.  *Id.*  This is contradicted by the record.

A noncitizen who is subject to a final order of removal but has been released from custody may be re-detained for failure to comply with the conditions set forth in the order of supervision or if, pursuant to a change in circumstances, ICE "determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 14

8 C.F.R. § 241.13(i)(1)–(2).  Upon the noncitizen's return to custody, she must be given notice of the reasons her release was revoked and an opportunity to respond and submit evidence.  *See* 8 C.F.R. § 241.13(i)(3).  When a noncitizen is re-detained because of a change in circumstances, 8 C.F.R § 241.13(f) sets forth the factors the government must consider when determining whether there is a significant likelihood that the noncitizen will be removed in the reasonably foreseeable future.

Due process also governs here.  It is well established that due process rights extend "to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.  "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' . . . interests within the meaning of the Due Process Clause of the Fifth . . . Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

Petitioner has a constitutionally protected interest in her continued liberty.  Petitioner's interest in not being detained "is the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).  When Petitioner was released on her 2019 OSUP, she acquired a liberty interest protected by the Due Process Clause.  *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty."); *see also Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025).

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 15

Additionally, Petitioner's arrest underscores the high risk of erroneous deprivation of liberty absent a pre-detention hearing. Respondents assert that Petitioner was lawfully re-detained because of an alleged violation of conditions of release. But again, that argument conflicts with the Notice of Revocation, which asserts a different basis; namely, enforcing the 2014 removal order. Dkt. 7, Ex. 5 at 2. That same notice makes no reference to an alleged violation of release conditions. *Id.* The Court also observes that there is a fundamental difference between an alleged violation and an adjudication of guilt. The only evidence put forth by Respondents is that the battery charge is pending. In sum, re-detaining Petitioner without a hearing in which factual questions regarding compliance with her 2019 OSUP or the actual basis for her revocation could be decided maximized the risk that her liberty interest would be erroneously deprived.

Finally, the government's countervailing interest in detaining Petitioner prior to a hearing is minimal. Respondents have an interest in ensuring a noncitizen appears at future immigration proceedings and that a noncitizen does not pose a danger to the community. *Zadvydas*, 533 U.S. at 690 (government has an interest in "ensuring the appearance of [noncitizens] at future immigration proceedings" and "preventing danger to the community"). While providing a hearing before re-detaining an individual would require expending resources (money and time), such costs are outweighed by the risk of erroneously depriving an individual of a significant liberty interest. *See, e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). Though requiring a pre-detention process in this case would present some administrative burden, given the high risk of erroneous deprivation and the fundamental liberty interest at stake, providing effectively no pre-

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 16

detention process—as ICE did here when Petitioner was transferred to immigration custody—is constitutionally deficient.

Accordingly, if Respondents seek to re-detain Petitioner in the future, they must provide notice and an opportunity to respond that comports with due process considerations articulated above and 8 C.F.R. § 241.13(i), along with a hearing before a neutral decisionmaker.  The Court also finds that Respondents bear the burden of proving by clear and convincing evidence that Petitioner is a flight risk or a danger to the community at any subsequent re-detention hearing. *See Pinchi v. Noem*, 792 F. Supp. 3d 1012, 1038 (N.D. Cal. July 24, 2025) (holding Petitioner may not be detained unless the government demonstrates at a bond hearing, by clear and convincing evidence, she is a flight risk or a danger to the community and that no conditions other than her detention would be sufficient to prevent such harms.).

        ii.     <u>The Court denies Petitioner's request to enjoin Respondents from re-detaining her unless the government obtains and provides travel documents to Cuba.</u>

Petitioner requests relief which prohibits the government from re-detaining her unless the government obtains valid travel documents to Cuba, provides them to Petitioner and her counsel, and offers Petitioner an opportunity to leave on her own within two months.  Dkt. 1 at 32. Petitioner further requests that only if she does not leave should the government be permitted to re-detain her, but only if the government "has already made concrete arrangements for her to be put on a flight to Cuba in the reasonably foreseeable future."  *Id.*  Respondents argue such relief would "improperly impose procedural requirements that lack precedent or authority."  Dkt. 5 at 13.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 17

The Court declines to order such specific relief.  The Court is satisfied that requiring notice and an opportunity to respond and offer evidence, prior to any re-detention occurring, addresses any concern this request seeks to remedy.

          iii.     <u>Petitioner is entitled to notice and a meaningful opportunity to be heard before any attempted third country removal.</u>

Petitioner also challenges her potential third country removal to Mexico under the Fifth Amendment, the Immigration and Nationality Act (INA), the Convention Against Torture, and implementing federal regulations.  Dkt. 1 at 27.  Respondents' respond that Petitioner's requested relief as to her removal to Mexico are covered under DHS policy and that the facts here demonstrate compliance with that policy.  Dkt. 5 at 10.

A number of courts in this district have recently addressed challenges to ICE's current third country removal policy and have concluded that the policy violates due process.  *See Baltodano v. Bondi*, No. C25-1958-RSL, 2025 WL 3484769, at *6 (W.D. Wash. Dec. 4, 2025); *Abubaka v. Bondi*, No. C25-1889-RSL, 2025 WL 3204369, at *6 (W.D. Wash. Nov. 17, 2025); *see also Nguyen*, 796 F. Supp. 3d at 727–29.  In reaching these conclusions, the courts have relied on an earlier decision from this district, *Aden v. Nielsen*, 409 F. Supp. 3d 998 (W.D. Wash. 2019).

In *Aden*, the court held that a "noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation." *Id.* at 1009.  Citing to both the due process requirement that a petitioner be afforded "a full and fair hearing, an impartial decisionmaker, and evaluation of the merits of his or her particular claim," and to the statutory requirements of 8 U.S.C. § 1231, the *Aden* court held that in the context of a third country removal, "[g]iving petitioner an opportunity to file a motion to reopen [his removal proceedings]

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 18

. . . is not an adequate substitute for the process that is due in these circumstances." *Id.* at 1010 (citations omitted). Rather, the court concluded, the removal proceedings must be reopened so that a hearing may be held. *Id.* at 1011. In *Nguyen*, the court noted that "[t]he requirements set forth in *Aden* flow directly from binding Ninth Circuit precedent about due process protections before removal to a third country[,]" and held that ICE's current policy governing third country removals "contravenes Ninth Circuit law." *Nguyen*, 796 F. Supp. 3d at 727–28.

The Court finds no basis to deviate from the reasoning in *Baltodano*, *Abukaka*, and *Nguyen*, and applies the same reasoning here. The Court therefore concludes that Petitioner is entitled to the requested order that Respondents not remove her to a third country without notice and a meaningful opportunity to be heard in reopened removal proceedings.

    iv. <u>The Court denies Petitioner's request for an injunction prohibiting her removal to any third country.</u>

Additionally, Petitioner alleges her removal to a third country would constitute punitive banishment, in violation of the Fifth and Eight Amendments. Dkt 1 at 30. Petitioner asserts that the government "has arranged for third countries to receive deportees and imprison them on arrival, possibly indefinitely," that it has "selected countries notorious for human rights abuses and instability for third country removal arrangements[,]" and that it has "targeted individuals with criminal convictions for third country removals where they will be imprisoned and harmed[.]" *Id*. Such conduct, Petitioner alleges, "shocks the conscience" under the Fifth Amendment's right to substantive due process and is "cruel and unusual punishment." *Id.* at 30-31. Petitioner asks the Court to bar Respondents from removing her to any third country because the government's policy seeks to impose unconstitutional punishment and imprisonment. *Id.*

Respondents respond that Petitioner has failed to "demonstrate that DHS's third country removal policy is unconstitutional" and that the "governing statutory and regulatory framework

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 19

provides a specific process for addressing such concerns." Dkt. 5 at 11. Respondents further argue that Petitioner's requested relief would "require DHS to preemptively assess and prohibit removal based on speculative or unasserted risks, outside the established procedures." *Id.* at 12.

Petitioner says her fear of irreparable harm is not speculative. Dkt. 8 at 13. She points to an American Immigration Council fact sheet and a New Yorker article discussing third country removal. *Id.* The Court recognizes courts in this district have found that ICE's current third country removal practices are punitive. *E.g., Nguyen,* 796 F. Supp. 3d at 732 (taking judicial notice of public statements made by government officials that "offer evidence that third country deportation is occurring as a punishment"). However, Petitioner has not provided facts specific to her potential removal to a third country that demonstrate a likelihood of irreparable injury entitling her to a permanent injunction prohibiting Respondents from removing her to any third country.

On the present record, the Court declines to make the broad ruling sought by Petitioner. The relief granted in this Order, requiring notice and a meaningful opportunity to be heard in reopened removal proceedings, will allow Petitioner to challenge any proposed third country removal where she can show a risk of imprisonment or other serious harm, and nothing in this Order prevents her from pursuing additional relief if warranted by future events.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS, in part, Petitioner's petition for writ of habeas corpus (Dkt. 1). The Court ORDERS as follows:

(1) Respondents shall RELEASE Petitioner Martinez from custody within **twenty-four (24) hours** of this Order, subject to the conditions of her most recent Order of Supervision, and file notice with the Court within **forty-eight (48) hours**, confirming that Petitioner Martinez has been released from custody;

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 20

(2) Respondents are ENJOINED from re-detaining Petitioner Martinez without first providing notice and a meaningful opportunity to respond in compliance with due process and 8 C.F.R. § 241.13; and

(3) Respondents are ENJOINED from removing Petitioner Martinez to a country other than Cuba without notice and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge.

(4) The Court DENIES Petitioner's remaining requests for injunctive relief.

Dated this 15th day of April, 2026.


*S. Kate Vaughan*
S. KATE VAUGHAN
United States Magistrate Judge

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 21